THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.  
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 George W. Gee, Appellant.
 
 
 

Appeal From Greenville County
 C. Victor Pyle, Jr., Circuit Court Judge

Unpublished Opinion No. 2004-UP-597
Submitted November 1, 2004  Filed November 30, 2004

AFFIRMED

 
 
 
 Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.
 
 
 

PER CURIAM:  George W. Gee was convicted of criminal domestic violence of a high and aggravated nature (CDVHAN) and sentenced to ten years imprisonment, suspended upon the service of nine months and five years probation.  Gee appeals, arguing the trial court erred in allowing a police officer to testify about the victims statement because it was hearsay and not an excited utterance.  We affirm.
FACTS
On February 8, 2002, Gee and his wife, Becky, went with friends to a local bar to watch a band.  Gee and Becky both became intoxicated, and their friends drove them home early in the morning on February 9th.  Around 7:00 a.m., Becky appeared at her neighbors house crying, doubled-over in pain, and with obvious bruises on her face and mouth.  Becky informed the neighbor that she and Gee had been fighting and Gee had hit her over the course of several hours.  The neighbor and Becky arrived at the hospital around 7:30 a.m., where she was treated for bruises, multiple broken ribs, and a life-threatening punctured and collapsed lung injury.  While at the hospital, Becky informed the triage nurse that Gee had beaten her for several hours.  The police were called, Officer Roderick Adams arrived to speak with Becky at around 7:40 a.m., and Becky gave a statement to Adams within a short amount of time, after initially being unable to speak with him.  Becky described the fight in detail.  The neighbor, the triage nurse, Adams, and two treating physicians all testified that Becky was extremely upset, anxious, and crying while she was at the hospital.  Becky was not released from the hospital until February 14th.  
With Beckys consent and after obtaining a search warrant, Adams went to search the couples home immediately after talking to Becky.  Adams discovered obvious signs of a struggle, blood specks on the floor, the telephone pulled out from the wall, and Gee passed out in his bed with blood on his knuckles.  Gee was arrested for CDVHAN.
At trial, the State asked Officer Adams to inform the jury what Becky told him when she was in the hospital.  Gee objected to the statement as hearsay, but the trial court overruled the objection, finding the statement was an excited utterance.  Adams testified as follows:

 She told me they had been to Dinos and they got in an argument while they were at the bar and both had been drinking . . . She told me on the way home they had started  she told me the argument actually started on the way home.  And once they got back to their house on Fauna Wood, they got in the house and thats when he struck her with an open palm, slapped her on the side of the face.  Thats what she started saying.  And then she  like I say, more and more she talked and more and more she started crying becoming more tearful. . . She said he did that.  And she was trying to get away.  She ran and tried to lock herself in the restroom, which when you walk in the door, its on the right side of the  you go to the right.  She said she tried to lock herself in the restroom.  He came in there and struck her, struck her again.  I dont remember exactly where he struck her at the time he was in the restroom. And she got back out.  And she went through the kitchen area like through the living area of the house.  And when she was trying to get out, she finally made her way to the front door.  Thats when he got her and kicked her there.  She said he was kicking her in the ribs repeatedly.  

Becky testified that she was grossly intoxicated at the bar and did not recall the events after her friends dropped her and Gee off at their house, with the exception of a feeling that she was being kicked by someone wearing sandals.  Becky admitted that Gee owned sandals.  She stated that she recalled going to the neighbors house because she could not breathe, but she did not recall giving statements to the triage nurse or Adams.  According to Becky, she and Gee were getting along well that evening, and Gee had never hit her.  The three friends who accompanied Gee and Becky to the bar all testified that Becky and Gee were getting along well that night and Becky fell down twice.  None of the three noticed any bruising or that she had problems breathing.  Gee also testified that he and Becky were extremely intoxicated, that he fell on top of her when he attempted to help her to bed, and that he had no idea she was injured.  The jury found Gee guilty of CDVHAN, and Gee appeals his conviction and sentence.  
LAW/ANALYSIS

Gee asserts the trial court erred in admitting the statement Becky made to Officer Adams because:  it was made an hour or two after the event; Becky spoke with two other people before speaking with Adams; the statement was not a short, spontaneous utterance; and the statement was unreliable.  Thus, Gee argues, the trial court erred in not finding the statement to be hearsay.  We disagree.
Decisions on the admissibility of evidence lie within the trial courts sound discretion and will not be reversed on appeal absent an abuse of discretion amounting to prejudice to the opposing party.  State v. Mansfield, 343 S.C. 66, 77, 538 S.E.2d 257, 263 (Ct. App. 2000); State v. Patterson, 337 S.C. 215, 228, 522 S.E.2d 845, 851 (Ct. App. 1999).  An excited utterance is an exception to the hearsay rule.  Rule 803(2), SCRE.  In order for a statement to constitute an excited utterance, the statement:  must relate to a startling event or condition; must be made while the declarant is still under the stress or the excitement; and the excitement or stress must be caused by the startling event.  Rule 803(2), SCRE; see State v. Sims, 348 S.C. 16, 21, 558 S.E.2d 518, 521 (2002) (defining an excited utterance).  Whether a statement is an excited utterance is a decision within the trial courts discretion, and the trial court makes this determination after considering the totality of the circumstances.  Sims, 348 S.C. at 20-21, 558 S.E.2d at 521.  
We find no abuse of discretion in the trial courts decision to admit the statement.  Beckys injuries certainly were the result of a startling event.  She was still suffering from the stress of the beating when she arrived at the hospital.  Officer Adams arrived at the hospital within a short time after Beckys arrival.  Adams testified that Becky was still upset when he first attempted to speak with her, he went into the hallway to speak with the neighbor, and then he returned to Becky to take her statement.  Several witnesses who saw Becky both before and after Adams took her statement testified that she was extremely upset, anxious, and weeping.  Thus, there was evidence that Beckys statement related to a startling event, was made while she was still under the stress of the event, and the stress was caused by the startling event.  Based on the totality of the circumstances, the trial court did not abuse its discretion in finding the statement was an excited utterance and admissible at trial.    
Further, even assuming it was error for the trial court to admit the statement, any error would be deemed harmless.  Without any objection, both the neighbor and the triage nurse testified that Becky stated Gee caused her injuries.  Thus, although Beckys statement to Adams was more extensive than her statements to the neighbor or the triage nurse, the statement given to Adams identifying Gee was merely cumulative to other evidence admitted at trial.  See State v. Haselden, 353 S.C. 190, 197, 577 S.E.2d 445, 448-49 (2003) (holding that the admission of improper evidence is harmless where it is merely cumulative to other evidence). 
CONCLUSION
The trial court did not abuse its discretion in finding the statement was an excited utterance and in admitting it.  Thus, Gees conviction is
HUFF, KITTREDGE, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.